**TIMOTHY A. SCOTT**, CA SBN 215074
**MARCUS S. BOURASSA**, CA SBN 316125
McKenzie Scott PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
email: tscott@mckenziescott.com
          mbourassa@mckenziescott.com

Attorneys for Daniel Dasko

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br>         Plaintiff,<br>vs.<br><br>Daniel Dasko,<br>         Defendant. | Case No.: 3: 22-cr-01715-LL<br><br>Defendant's Motion to Extend Self-Surrender Date |

Defendant requests that his self-surrender date be extended from October 3, 2023, so that he can be designated by BOP and safely surrender to facility housing similar offenders without the attendant hardship (and *real* risk to his personal safety) that local self-surrender, temporary detention in general population, and transportation would entail. The Court has already, correctly, determined he is *not* a flight risk and that, subject to the ongoing supervision, home detention, GPS monitoring, and electronic restrictions he is *not* a danger pending self-surrender. Under the circumstances, compelling him to self-surrender before he has been designated would be "cruel, unusual, and unnecessary." *United States v. Polouizzi*, 760 F. Supp. 2d 284, 288 (E.D.N.Y. 2011) (extending self-surrender in child pornography case)

1

## I.   BACKGROUND [1]

Mr. Dasko has been on bond, without incident, for more than a year. Dkt. 42. He is subject to thorough conditions, including GPS monitoring, home detention, limitations on who he may speak to, limitations on (and monitoring of) his access to electronic devices in his home, and a $500,000 bond secured by real property (both his own and his parents' homes). Dkt. 40. He lives (and is confined at home) with his sureties and parents.

On September 19, 2023, Mr. Dasko appeared for sentencing, knowing that the Government was seeking a sentence of 17.5 years in prison and that he might be remanded. The Court imposed a sentence approximately 2 years shorter than the Government sought.

Mr. Dasko sought to be allowed to self-surrender in due course, a courtesy that is legally permitted and customary when defendants have done well on bond and appear for sentencing without incident. The Government (which vociferously resisted Mr. Dasko's original release on bond) recognized that, notwithstanding the Court's sentence, Mr. Dasko was not so much of a flight risk that he needed to be remanded. Still, the Government asked that the Court give Mr. Dasko no more than two weeks to get his affairs in order and surrender.

Defense counsel raised their concern that Mr. Dasko would not be designated in time. A primary concern for Mr. Dasko is that if he surrenders before he is designated, not only will he undergo the unnecessary hardship of transfer, but that his life and safety will be jeopardized by placement in general population in light of sentencing filings, news coverage, and his sentence. The defense asked that, at a minimum, the Court put something in the record or judgment documenting a request

---

[1] Counsel, having hoped no such motion would be necessary, is without the transcript of Mr. Dasko's sentencing hearing. Accordingly, counsel has done their best to recount the background of what occurred at sentencing from memory. Bourassa. Decl. ¶ 5.

1 | for expedited designation and that the U.S. Attorney's office assist in expediting
2 | Mr. Dasko's designation by BOP.
3 |     The Court granted the latter requests, recommended designation to a facility
4 | with an SOMP (Sex Offender Management Program), asked that both sides make
5 | efforts to expedited Mr. Dasko's designation (to which both sides agreed), and then
6 | granted Mr. Dasko only two weeks before he shall self-surrender.
7 |     The following day the Court issued the judgment, which inadvertently
8 | omitted any reference to the SOMP and expedited designation. Dkt. 89.
9 |     The defense promptly contacted the Court about the oversights and, with the
10 | prosecutor's concurrence, the Court issued an amended judgment on September 21,
11 | 2023. Bourassa Decl. ¶ 6; dkt. 90. The amended judgment recommends that BOP
12 | expedite designation. Dkt. 90 at 2.
13 |     In the intervening time, Mr. Dasko has paid restitution in full and submitted
14 | paperwork to register as a sex offender as instructed by Pretrial Services and
15 | required by law. Bourassa Decl. ¶ 7.
16 |     The defense has sought to contact the BOP's designation office without any
17 | success. That office, which in counsel's experience has been wholly unresponsive
18 | to requests from defense attorneys, specifically routes contact from law
19 | enforcement or prosecutors differently than defense attorneys. Bourassa Decl. ¶ 8.
20 | The defense has inquired of the prosecution whether they have contacted BOP about
21 | the expedited designation and whether the prosecution team has obtained any
22 | information about the status of the designation. Bourassa Decl. ¶ 9. It is unclear
23 | what, if any, effort the U.S.A.O. has made to assist in the Court's recommended
24 | expedited designation. *Id.* The prosecution responded by stating that they had not
25 | received "any additional information from the BOP." *Id.*
26 |     During his pretrial confinement at MCC, before his release on bond, Mr.
27 | Dasko felt compelled to lie to other inmates about his offense and the charges in the
28 | case for his own safety. As the Court is aware, the Magistrates understand and

acknowledge the risks posed to defendants like Mr. Dasko and – in this case – the Court held all of his magistrate proceedings on their own calendars or trailed them until after all in-custody matters had finished. Bourassa Decl. ¶ 10. In magistrate court, those efforts were specifically taken because all involved understand it is less safe for inmates to serve time in temporary facilities, amidst general population, where the other detainees know of charges involving sexual exploitation of a child. *Id*. Counsel does not believe these basic, practical realities about the safety of detainees are in dispute. *Id.* ¶ 11.

The U.S. Marshals have confirmed that BOP has all the necessary paperwork from their office and from the Probation Department. Bourassa Decl. ¶ 12. Thus, the parties appear to be waiting for a designation decision by BOP. Since they will not take counsel's calls, the defense is ill-positioned to obtain any information about BOP's prospective timeline.

This motion follows.

## II.    ARGUMENT

Release pending execution of sentence is governed by 18 U.S.C. § 3143. Generally, release is permitted where the judicial officer finds by clear and convincing evidence that a person is "not likely to flee or pose a danger to the safety of any other person or the community" if allowed to remain on bond. 18 U.S.C. § 3143(a). Where the court makes that finding, it "shall order the release" of the defendant pending execution of the sentence. *Id.* Here, the Court has already made the foregoing findings.

Although Congress sought to apply an even higher standard for certain types of crimes, those provisions do not apply here. *See* 18 U.S.C. § 3143(a) (cross referencing offenses listed in 18 U.S.C. § 3142(f)(1)(A)-(C)). Thus, the standard governing Mr. Dasko's release pending execution of sentence is the same as applies in most cases.

Even in child pornography cases, "[s]elf-surrender under such circumstances is the normal practice in federal courts. It saves the government the expense of transportation and avoids the harshness involved in requiring a long and difficult journey from court to prison while shackled, handcuffed and chained." *United States v. Polouizzi*, 760 F. Supp. 2d 284, 287–88 (E.D.N.Y. 2011). Detention pending designation to a facility by BOP frequently becomes "cruel and unusual if there is no reason for it except unnecessary infliction of pain." *Id.* Thus, although such decisions rarely land in written decisions, it is not difficult to find instances where Courts extend defendants self-surrender dates for child pornography offenders in due course, just as they ordinarily do for a wide variety of defendants in federal court. *See, e.g., United States v. Dolehide,* 2011 WL 1812795, at *7 (N.D. Iowa May 6, 2011) (135-month sentence for child pornography, allowed to self-surrender post-designation), *aff'd*, 663 F.3d 343 (8th Cir. 2011); *Hanlon v. United States*, 2016 WL 7049241, at *1 (M.D. Fla. Dec. 5, 2016) (similar); *United States v. Meget*, 2018 WL 4496651, at *9 (E.D. Ky. Aug. 27, 2018), *report and recommendation adopted*, 2018 WL 4496484 (E.D. Ky. Sept. 18, 2018) (repeated supervised release violator in child pornography case permitted to self-surrender once designated to BOP facility).

In cases like Mr. Dasko's, BOP typically designates inmates to a facility where they can receive treatment in a "residential Sex Offender Treatment Program." *United States v. C.R.*, 792 F. Supp. 2d 343, 520 (E.D.N.Y. 2011) *vacated and remanded on unrelated grounds by United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013). There, even inmates who are serving long sentences or waiting for treatment, are collocated in units of inmates with similar convictions. *Id.* at 522. Under those circumstances, housing the inmates is substantially *safer* for them than elsewhere.

Having already concluded that Mr. Dasko is not a risk of flight or danger pending his self-surrender, nothing is served by compelling him to surrender before

5

he is designated to a safer facility. Although it does not generally justify a departure from the sentencing guidelines, numerous courts have acknowledged the dangers posed to sex offenders in prison. *See United States v. Stoterau*, 524 F.3d 988, 1012–13 (9th Cir. 2008) (concern for risk of violent abuse in prison "is equally present for all similarly situated sex offenders who face prison sentences"); *United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir. 1997) ("[s]usceptibility to abuse in prison justifies departure only in extraordinary circumstances. . . . Otherwise, every child pornographer would be eligible for a departure."). Even a small risk of violence should give the Court pause. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.").

Having already concluded that Mr. Dasko does not pose such a risk of flight or danger (subject to his ongoing, thorough supervision) as to require remand, little is served by compelling Mr. Dasko to surrender to serve his sentence before BOP has designated him. Mr. Dasko does not seek to indefinitely postpone service of his sentence, but rather to commence it safely.

For the foregoing reasons, the Court should extend Mr. Dasko's self-surrender date by two weeks to October 17 and order a status update from both sides on or before October 16 so that the Court can consider whether further extension is necessary or appropriate.

Mr. Dasko's original self-surrender date was set for October 3, 2023, at noon. Accordingly, the defense has styled the instant motion as an emergency motion.

Dated: September 30, 2023

*/s/ Marcus S. Bourassa*
**MARCUS S. BOURASSA**
McKenzie Scott PC
Attorneys for Daniel Dasko

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28